BOARD OF SUPERVISORS OF GRATIOT COUNTY *v.* MUNSON.

1. Mandamus—Parties—Municipal Corporations.

If proceedings by mandamus to compel the county treasurer to comply with Act No. 461, Local Acts 1907, by depositing county funds in the depository designated by the board of supervisors, are brought in the name of the board of supervisors instead of the county, an amendment would be proper to correct the error, which would not therefore require the vacation of the order issuing the writ on certiorari.

2. Constitutional Law—Public Officers—Public Funds.

A local act requiring the county treasurer of Gratiot county to deposit funds of the county in a depository designated by the board of supervisors, and to account for the interest thereon, does not impair the obligation of contract by affecting any vested right of the treasurer.

3. Same—Regulation.

That the office of county treasurer is a constitutional office does not deprive the legislature of power to regulate the deposit of public funds in his hands.

4. Same—Construction of Statutes.

A section of the local act which provides that the treasurer and all other officers of the county shall deposit county funds in their hands with the designated depository is to be construed within the title of the act so as to refer to deputies of the treasurer and persons appointed to discharge his duties, and so as to refer to all county officers, repealing other statutes by implication.

5. National Banks—Bonds.

A bond given by a national bank to secure deposits made with it by a county is not *ultra vires* under the provisions of 13 U. S. Stat. at Large 110 (5 Fed. Stat. Ann. 141), since no liability in excess of the actual deposit is created.

6. Corporations—Bonds—Execution.

No ground for complaint is given the treasurer if the bond is not authorized by the corporation, where it is signed by the proper officers, and the sureties are bound to a distinct, independent liability.

Certiorari to Gratiot; Gage (William G.), J., presiding.

Submitted May 25, 1909. (Calendar No. 23,350.) Decided July 6, 1909.

Mandamus by the board of supervisors of Gratiot county to compel Harvey R. Munson, county treasurer, to deposit county funds in a designated depository. An order granting the writ is reviewed by respondent on writ of certiorari. Affirmed.

*John M. Everden,* Prosecuting Attorney, and *William A. Bahlke,* for relator.

*Lyon & Moinet* (*M. R. Salter,* of counsel), for respondent.

MONTGOMERY, J.   This is certiorari to review a mandamus proceeding instituted by the relator in the circuit court.   Mandamus was asked to compel the respondent, who was county treasurer, to deposit the public moneys belonging to the county in the depository designated by the board of supervisors under the provisions of Act No. 461, Local Acts 1907.   The circuit judge granted the writ as prayed.   The respondent contended in that court and in this, *first,* that the proceedings were not properly launched and should have been in the name of the county rather than in the name of the board of supervisors, and on the merits of the case contended that the act in question was unconstitutional for various reasons.   The objection that the suit should be brought in the name of the county is purely technical, as the title is very clearly subject to amendment.   See *Johr* v. *Board of Sup'rs of St. Clair Co.,* 38 Mich. 532.   And we should not use the writ of certiorari to vacate an order which might be corrected by amendment.   The most that we should feel called upon to do in any event would be to remand the record for correction.   We therefore proceed to consider the merits of the case.

Act No. 461, above referred to, is an act entitled:

"An act authorizing and requiring the board of super-

visors of Gratiot county to designate a local bank or banks as the depository or depositories of Gratiot county moneys, and prescribing the duties of certain officers relative thereto."

The act provides for receiving bids for the deposits from the banks in the county, for the awarding of the contract to the most favorable bidder, and for the giving of security by such banks, and provides that all interest moneys earned shall be credited to the contingent fund of the county, and contains a further provision that—

" It is hereby made the duty of the county treasurer of said county, and all other officers of said county having said funds or any part thereof in their possession or under their control, to deposit the same in the depositories so designated by the board of supervisors."

Various reasons are assigned why this act is unconstitutional: *First,* it is alleged that it impairs the obligation of contract, and an elaborate discussion is had to maintain this proposition. So far as the act affects the respondent, it may be said that it was in force before he took office. No existing or vested right in the respondent therefore could be said to have accrued which was impaired by this act.

It is also contended that the office of county treasurer is a constitutional office, and we infer from the argument that it is the understanding of counsel that the control of the public funds by the legislature is in some way restricted by this fact. It is urged that the county treasurer, who gives a bond required by law, is an insurer of the money deposited in his hands, and that, therefore, control of the same cannot be taken from him and placed in another depository. The case of *Perley* v. *County of Muskegon,* 32 Mich. 132 (20 Am. Rep. 637), is relied upon to sustain this view. But under section 1197 *et seq.,* 1 Comp. Laws, comprising an act entitled, "An act to provide for the safekeeping of public moneys," the segregation of such public funds is provided for, and it is clearly within the power of the legislature to insure the

safety of such funds. See, upon this subject, *Board of Sup'rs of Kent Co.* v. *Verkerke*, 128 Mich. 202 (87 N. W. 217, 92 Am. St. Rep. 450), in which these sections are construed, and in which case it was held that the interest on moneys deposited in a designated depository belong to the county, and not to the treasurer.

It is also contended that the act is broader than its title, and this contention is based upon the provisions of section 5, which make it the duty of the county treasurer of said county,

"And all other officers of said county having said funds or any part thereof in their possession or under their control, to deposit the same in the depositories so designated by the board of supervisors."

This act is to be construed in connection with other provisions of the statute. Repeals by implication are not favored. The treasurer, except in certain cases, is made the custodian of public funds of the county, and the duty is imposed upon those into whose hands funds come to turn them over to the treasurer. We do not think the purpose of the legislature as manifested by this provision was to amend or repeal these other provisions. As pointed out by the learned circuit judge, "all other officers of said county" may be held to have included deputies of the treasurer and persons "appointed under 1 Comp. Laws, § 2537, to perform the duties of the treasurer, but who are not designated as treasurer." This construction does no violence to the other provisions of the statute, and gives effect to the provisions quoted.

It is next contended that the contract and bond of the Ithaca National Bank, the designated custodian, is *ultra vires* under the national bank act (13 U. S. Stat. at Large, 110 [5 Fed. Stat. Ann. p. 141]), which reads:

"No association shall at any time be indebted, or in any way liable, to an amount exceeding the amount of its capital stock at such time actually paid in and remaining undiminished by losses or otherwise, except on account of demands of the nature following: *First.* Notes of cir-

culation. *Second.* Moneys deposited with or collected by the association. *Third.* Bills of exchange or drafts drawn against money actually on deposit to the order of the association, or due thereto. *Fourth.* Liabilities to the stockholders of the association for dividends and reserved profits."

The second exception above quoted would seem to be sufficiently broad to cover a bond given to secure deposits. The liability of the bank is not increased by the fact that it enters into a written agreement to pay money deposited. It has not undertaken in excess of the amount of its capital stock except in this form. It is urged that the record fails to show the authority of the president and cashier to sign the bond given by the Ithaca National Bank. This objection is purely technical. The bond given contained the provision that—

" The liability of the sureties on this bond shall be independent of the liability of the principal thereon in accordance with the terms and provisions of said contract and the rules and regulations under which the same is prepared and adopted."

It is unnecessary to determine whether the authority of the president and cashier to execute this bond is implied from the bid which it made to the county and the receipt of deposits. The county has the full security, not only of the principal, but of the sureties for the deposit. The defendant is not in a position to complain of any technical irregularity, if any.

The order of the circuit court will be affirmed.

OSTRANDER, HOOKER, MOORE, and McALVAY, JJ., concurred.