STAR-BATT, INC v CITY OF ROCHESTER HILLS

Docket No. 225508. Submitted February 5, 2002, at Detroit. Decided May 31, 2002, at 9:10 A.M.

Star-Batt, Inc., brought an action in the Oakland Circuit Court against the city of Rochester Hills, seeking the interest earned on surety bonds posted by, and returned to, the plaintiff pursuant to an ordinance of the defendant. The ordinance required those seeking building permits to post cash bonds to assure payment for damages to public property or utilities caused by construction, guarantee completion of work required to obtain certificates of occupancy, and provide a fund to pay unpaid water, sewer, street cleaning, and other charges determined by the defendant. The ordinance was silent with respect to the ownership or ultimate disposition of interest earned on the surety bonds. On cross-motions for summary disposition, the court, Deborah G. Tyner, J., granted summary disposition for the defendant, ruling that the defendant was entitled to keep the interest earned. The plaintiff appealed.

The Court of Appeals *held*:

In the absence of a clear provision in the ordinance to the contrary, and consistent with the common law, interest follows the principal. The sums posted by the plaintiff remained the property of the plaintiff while they were in the possession of the defendant. The return of the sums posted signified the satisfaction of the objectives behind the surety bond requirement. Payment of interest earned to the plaintiff compensated the plaintiff for the lost use of its funds while the funds were deposited with the defendant.

Reversed and remanded for further proceedings.

SURETYSHIP AND GUARANTEE — SURETY BONDS — INTEREST — MUNICIPAL CONSTRUCTION CODES.

Interest earned on a cash bond posted by an applicant for a building permit pursuant to a municipal construction ordinance that requires such bonds to assure payment for damages to any public property or utilities caused by construction, guarantee completion of work required to obtain certificates of occupancy, and provide a fund to pay outstanding water, sewer, and any other charges determined by the municipality is the property of the building permit applicant in the absence of a contrary provision in the ordinance.

*Douglas A. Tull, P.C.* (by *Douglas A. Tull, Lara R. Stutz,* and *Judith M. Heck*), for the plaintiff.

*Beier Howlett, P.C.* (by *John D. Staran* and *Lawrence R. Ternan*), for the defendant.

Before: NEFF, P.J., and CAVANAGH and SAAD, JJ.

SAAD, J. Plaintiff Star-Batt, Inc., formerly known as Stolaruk Corporation, appeals as of right the trial court's order granting defendant city of Rochester Hills'[1] motion for summary disposition. We reverse and remand.

### I. NATURE OF THE CASE

A city of Rochester Hills ordinance requires contractors, such as plaintiff, to post a cash bond as a fund of dollars available to compensate the city if the contractor causes damage to city property or fails to pay for certain city services. The city ordinance is silent regarding the ownership or ultimate disposition of any interest earned on the fund. Similarly, and somewhat curiously, the city ordinance is silent on the question whether the city is obliged to or will invest the funds and, moreover, whether and how the city will return the original principal (cash bond). Further, though the city ordinance sets forth in detail the schedule of fees for various building projects, it is, once again, silent on the question whether the cash bond or interest may be used to offset the costs incurred by the city in administering the fund created by the cash bonds posted by various contractors.

Here, the city returned the full amount of the cash bond because the contractor did not cause any dam-

---

[1] For purposes of clarity and ease of reference we refer to defendant, alternatively, as the city of Rochester Hills or the city.

ages or fail to pay requisite city charges, but the city refused to give plaintiff the interest earned on the principal fund. The city's refusal raises this issue of first impression: If a city ordinance requires a private contractor to post a cash bond to reimburse the city for potential damages, but the ordinance is silent on the question of interest earned on the cash bond (fund), then who owns the interest?

For the following reasons, we hold that the interest is the property of the private contractor and, therefore, should have been given to the contractor at the time the city returned the principal fund:

(1) Had the city desired to retain all or some portion of the interest earned on the funds (created by posting of cash bonds), it could have easily said so in the ordinance;

(2) Had the city desired to charge an administrative fee for managing the funds, again, it could have easily said so, but the city did not;

(3) The common-law rule that "the interest follows the principal" seems appropriate to apply in the absence of an express provision in the ordinance regarding the ownership and ultimate disposition of the interest; and

(4) A review of the interests at stake in the cash bonds strongly suggests that the private contractor has a greater right to the interest earned because:

(a) the city's interest in the fund is to protect the city against potential damages and, thus, this interest would have been satisfied when the city returned the principal, irrespective of the "interest" question, and

(b) it is the private contractor's interest in the *use* of the money (cash bond) for the time the city held the money that is, in effect, addressed by giving the interest earned to the contractor. Indeed, the net

effect is—the city is protected (the clear intent of the ordinance's requirement of a cash bond) and the private contractor is reimbursed for the loss of the use of its money for the time it was so held by the city.[2]

## II. FACTS AND PROCEDURAL HISTORY

Between 1977 and 1988, plaintiff submitted surety guarantees to Rochester Hills in the form of cash bonds totaling approximately $35,625. Rochester Hills' construction code (hereinafter the ordinance) requires private building contractors, such as plaintiff, to post cash bonds in order to obtain building permits. According to the ordinance, the bonds protect the city from potential property or utility damage caused during construction, guarantee the completion of work, and cover any unpaid utility bills.

Though not required to do so by the ordinance, the city invested the bond funds that the contractor posted pursuant to the ordinance and earned interest totaling $54,534.70. On or about November 10, 1995, the city returned to the contractor $35,625, the amount of the original cash bonds, but refused to turn over the interest earned. As stated earlier, the city ordinance is silent on the question of who is entitled to the interest earned on the cash bonds.[3]

On July 30, 1998, the contractor filed a complaint for an accounting and to receive the interest earned on the bonds. The contractor alleged that the relationship between it and the city was that of beneficiary and trustee and that the city was a fiduciary with respect to the contractor's bond deposit funds. In its

---

[2] We express no opinion whether a city has any obligation to invest the cash bonds, nor have we found any Michigan case law on this issue.

[3] The parties did not execute a written or oral agreement regarding the distribution of any interest earned while Rochester Hills held the bonds.

trial brief, the city argued that it holds the bonds on behalf of the public, not the contractor.[4] Therefore, the city argues there is no trustee-beneficiary relationship between the contractor and the city. Further, because the parties did not enter into a contract requiring the city to pay the contractor the interest and the interest was not wrongfully withheld from the contractor, the city asserted that the contractor does not have a valid claim to the interest.

The contractor argued below and says here that, because the city ordinance does not address the ownership of or disposition of interest, the common-law rule that *"interest follows the principal"* dictates that the interest earned on the cash bonds should be given to the contractor along with the return of the cash bonds. The contractor also asserted below, and says on appeal, that while surety bonds are posted for the city to use for any damage to public property and utilities and to pay for any outstanding bills, the cash deposited by the contractor continues to belong to the contractor unless and until any such damage or failure to pay occurs.

On December 27, 1999, the trial court entered an opinion and order granting summary disposition to the city. The trial court held that, because the ordinance does not address the issue of interest and because no fiduciary relationship exists, the city is entitled to keep the interest earned. The court reasoned that the city had no obligation to place the funds into an interest-bearing account and the cash bonds were held for the city's benefit. Therefore, the trial court ruled, any interest earned belongs to the city. On February 10, 2000, the trial court denied the

---

[4] In light of our ruling, we need not address the "trustee-beneficiary" arguments of the parties.

contractor's motion for reconsideration. We reverse and remand for further consideration.

### III. ANALYSIS

In this case of first impression, the contractor contends, correctly in our view, that the trial court erred in ruling that, as a matter of law, the city may retain interest earned on cash bonds posted by plaintiff pursuant to the Rochester Hills ordinance.[5]

This dispute evolves from a Rochester Hills ordinance that provides, in pertinent part:

5-02.02 *General Requirements*
   .01 *Surety Bonds*

\*      \*      \*

B. *Property and/or Utilities Damage.* A cash bond shall be posted before the issuance of a Building Permit for structures as required in Section 5-02.0A Appendix A following this Chapter which is incorporated herein by reference. *The bond shall assure payment for damages to any public property* and/or utilities caused by construction, guarantee completion of work required to obtain a Final

---

[5] This Court reviews a trial court's decision to grant summary disposition de novo. *Smith v Globe Life Ins Co,* 460 Mich 446, 454; 597 NW2d 28 (1999). Defendant moved for summary disposition under MCR 2.116(C)(8) and (C)(10). However, in deciding the motion, the trial court considered only plaintiff's complaint and no additional documentary evidence. Accordingly, though the trial court did not specify the court rule it used in making its decision, it appears to have relied on MCR 2.116(C)(8). As our Supreme Court explained in *Maiden v Rozwood,* 461 Mich 109, 119-120; 597 NW2d 817 (1999):

A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." When deciding a motion brought under this section, a court considers only the pleadings. MCR 2.116(G)(5). [Citations omitted.]

Certificate of Occupancy, and provide a fund to pay out-
standing and unpaid water, sewer, street cleaning and any
other such charges determined by the City to be unpaid.

*    *    *

5-02.04 *Enforcement*

The Director of Building and his authorized representa-
tives which shall specifically include, but not by way of lim-
itation, all inspectors in the Department of Building for the
City of Rochester Hills, are hereby authorized to enforce
this Chapter and are specifically authorized to issue
Appearance Citations for any violation hereof, pursuant to
the statutes made and provided. [Emphasis added.]

As both parties acknowledge, the ordinance is
silent on the issue of the ownership of interest earned
on cash bonds posted by building contractors.[6] Fur-
ther, if an ordinance is silent regarding an issue, "the
Legislature is deemed to act with an understanding of
common law in existence before the legislation was
enacted." *Nation v W D E Electric Co*, 454 Mich 489,
494; 563 NW2d 233 (1997). Moreover, "[w]here there
is doubt regarding the meaning of such a statute, it is
to be 'given the effect which makes the least rather
than the most change in the common law.'" *Id.*, quot-
ing *Energetics, Ltd v Whitmill*, 442 Mich 38, 51; 497
NW2d 497 (1993).

In asserting its right to the interest, the contractor
relies on this Court's analysis in *Grand Rapids Public
Schools v Grand Rapids*, 146 Mich App 652; 381
NW2d 783 (1985). In *Grand Rapids*, the plaintiff
school district sued to receive the interest that the

---

[6] "The rules governing the construction of statutes apply with equal
force to the interpretation of municipal ordinances." *Gora v Ferndale*, 456
Mich 704, 711; 576 NW2d 141 (1998). "In resolving disputed interpretations
of statutory language, it is the function of a reviewing court to effectuate
the legislative intent." *Nation v W D E Electric Co*, 454 Mich 489, 494; 563
NW2d 233 (1997).

defendant city earned by investing tax revenues collected and held for ultimate distribution to the school district under the city charter and MCL 211.42. *Grand Rapids, supra* at 653-654. The question in *Grand Rapids*, like here, is which party is entitled to the interest earned—the owner of the funds or the holder of the funds. The statute there, like here, was silent on who was entitled to the interest. In considering the effect of the statute's silence on the question of entitlement to the interest, this Court said:

> Since the statute and legislative history are silent, we must turn to established common-law principles to resolve the issue before us. In absence of a clear statutory provision to the contrary, the general principle is that interest on public funds designated for a specific purpose follows those funds. In general, interest is merely an incident of the principal fund, making it the property of the party owning the principal fund. [*Id.* at 656-657 (citations omitted).]

Using the common-law principle of "interest follows the principal," our Court declined to infer from the statute's silence a legislative intent to allow the city to retain the interest and therefore awarded the interest to the school district. *Id.* at 656.

The *Grand Rapids* Court based its holding, in part, on "the fiduciary and trust responsibilities of the city treasurer when dealing with school taxes . . . ." *Id.* at 657. We recognize that *Grand Rapids* involves a government agency's possession of interest earned on public tax funds held for a school district, not, as here, a city's withholding of interest on cash bonds posted for a construction project. However, where, as here, the ordinance is silent regarding the ownership of interest earned on *private* funds that remain plaintiff's *private* property, the general rule articulated by the *Grand Rapids* Court applies with equal strength. Interest earned on a principal fund is the property of

the party owning the fund. Though Rochester Hills' responsibility to plaintiff, a private contractor, may not rise to that of a fiduciary as in *Grand Rapids*, nonetheless, as a custodian of plaintiff's cash bond,[7] the city is not entitled to a "windfall" of interest earned on funds in which it has no ownership interest.[8]

Though Rochester Hills requires the posting of bonds, there is no requirement or provision in the ordinance that a building contractor must divest itself of its ownership interest in the posted bonds. Rather, the city held the bonds to protect it from potential damage caused during construction, the contractor's failure to complete the job, or a failure to pay utility bills, none of which occurred. Clearly, the city ordinance gives the city no right to retain any portion of the bonds unless a condition occurred giving it a right to reimbursement for damages. Again, nothing happened to entitle the city to keep the cash bond. Once

---

[7] Again, though we need not decide the trustee-beneficiary arguments (see n 3) and, accordingly, do not address whether the city of Rochester Hills is a fiduciary, nonetheless for case law instructive on the issue of interest earned on public funds, see, generally, 5 ALR2d 257. Though factually different, we agree with the reasoning stated by our Supreme Court in *Brown v Vidro*, 260 Mich 54, 55; 244 NW 227 (1932): "The funds being private and not public, the county treasurer, by force of the exigencies of the situation, is made its custodian. He is, in fact, the trustee of such funds and must account to the beneficiary thereof, not only for the corpus of such funds, but for all increment thereto by way of interest less the statutory compensation provided for his service."

[8] In holding that defendant could keep interest earned on the cash bonds, the trial court relied on principles set forth in *Amluxen v Eugene J Stephenson, Inc*, 340 Mich 273, 275-276; 65 NW2d 807 (1954), in which our Supreme Court quoted from *Mitchell v Reolds Farms Co*, 268 Mich 301; 256 NW 445 (1934). The trial court's reliance on *Mitchell* and *Amluxen* is misplaced. As plaintiff correctly observes, *Mitchell* did not concern interest earned on a principal fund, but "interest as damages . . . or interest on a judgment." Further, unlike in *Amluxen*, the issue here is not whether a private party must pay interest on a loan absent an express agreement, but whether a city must pay interest earned on bonds posted for the city's protection from potential damages by a building contractor.

the city returns the cash bond, its interests have been protected and the statutory purpose satisfied. Further, the private contractor whose money has "use" value, is compensated for the inability to use its money while held by the city as a fund in the event of damages. By giving the interest earned to the owner of the principal, the city fulfills its statutory purpose while also recognizing the contractor's interest in the use value of its money.[9]

Moreover, as plaintiff observes, the ordinance contains a fee schedule that sets forth, with specificity, the type, calculation, and amount of fees required by Rochester Hills. Accordingly, sums charged in excess of those fees, including interest earned on cash bonds would exceed the authorized fee schedule. The ordinance does not authorize the city to charge or retain sums in addition to those listed in the fee schedule.

We note again that had the drafters of the ordinance desired to retain the right to keep whatever interest accrued on cash bonds, they could have easily inserted such language in the ordinance. Were we to allow the city to keep the interest earned on the cash bonds, this would constitute a rewriting of the ordinance, sub silentio, that would effectuate an implied contribution to the city, without legislative authorization.[10]

---

[9] Again, we express no opinion regarding whether a city is obligated to invest the posted cash bonds.

[10] We reject Rochester Hills' argument that it may retain the interest because Michigan case law limits a public entity's responsibilities regarding performance bonds on public projects. Defendant cites *Barnes & Sweeney Enterprises, Inc v Hazel Park*, 169 Mich App 422; 425 NW2d 572 (1988), in which this Court held that the city had no duty to ensure that payment bonds were kept current or to warn of the expiration of the bond. Rochester Hills also cites *ABC Supply Co v River Rouge*, 216 Mich App 396; 549 NW2d 73 (1996), a case in which a contractor sought payment from the defendant for material supplied to another construction company. In *ABC*, this Court held that the city had no duty to require a contractor to furnish the statutory bond. Rochester Hills' argument that

The trial court erred in granting summary disposition to the city because the city chose not to state in the ordinance that it would retain interest earned on the funds and, in the absence of such language, we apply the common-law rule that "interest follows the principal" on the basis of the contractor's superior rights to the interest earned as the owner of the funds.[11] Accordingly, the contractor has stated a valid claim to receive the interest earned while the funds were in Rochester Hills' possession and the grant of summary disposition was improper.

Because we reverse the trial court's ruling on this dispositive issue, we need not address plaintiff's remaining issues.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

its duty to plaintiff should be limited, though Rochester Hills invested plaintiff's money, is simply not supported by these cases. Neither case addresses a city's duty with regard to invested bond funds. Moreover, we are not persuaded that requiring Rochester Hills to give plaintiff the interest earned on plaintiff's bonds would be procedurally burdensome, particularly where Rochester Hills voluntarily assumed the task of investing plaintiff's money in the first place.

Further, Rochester Hills voluntarily chose to invest plaintiff's cash bonds. Clearly, its city council could have specified in the ordinance that the cash bond shall be returned without interest and the city council could have charged a fee for administering cash bonds. The city could have simply held the bonds in a noninterest-bearing account. Alternatively, the ordinance could have required a letter of commitment issued by a bank or insurance company rather than the posting of cash bonds. In brief, the city had many options.

[11] As noted above, the city's purpose and objectives for the posted bonds have been fully satisfied.