BARNES & SWEENEY ENTERPRISES, INC v CITY OF HAZEL
PARK

Docket No. 99523. Submitted March 3, 1988, at Lansing. Decided
June 20, 1988.

Conco Midwest of Arkansas entered into a contract with the City
of Hazel Park to repair city streets. Conco then entered into a
contract with Barnes & Sweeney Enterprises, Inc., to supply
materials for the project. Barnes notified the city that materials
were being supplied. Conco defaulted on payments owed to
Barnes and Barnes sought to recover on the payment bond that
Conco furnished the city. The city informed Barnes that the
bond had expired prior to the time that Barnes made deliveries
of the materials. Barnes then filed a complaint in the Oakland
Circuit Court against the city alleging that the city had
breached a statutory duty of insuring that the performance
bond was still valid while materials were bring supplied to the
project. Barnes also brought claims for breach of contract
against Conco and its bonding company, Union Indemnity
Insurance Company. Subsequent to the filing of the complaint,
both Conco and Union Indemnity went into bankruptcy. The
circuit court then ordered the action stayed against all the
defendants. The circuit court then granted Barnes' motion to
sever the city from the other defendants. The city then moved
for summary disposition for failure to state a claim upon which
relief can be granted. The circuit court, Steven N. Andrews, J.,
granted the motion and entered an order granting summary
disposition in favor of the city. Barnes appealed.

The Court of Appeals *held:*

1. No duty exists on the part of the contracting governmental
unit to insure that payment bonds are kept current or to warn
subcontractors or materials suppliers of the expiration of the
bond.

2. The relevant statute requires the contractor to furnish the

REFERENCES

Am Jur 2d, Contractors' Bonds §§ 43 *et seq.*
Am Jur 2d, Negligence § 34.
Am Jur 2d, Public Works and Contracts §§ 105 *et seq.*
See the Index to Annotations under Public Works Contracts.

bond. The statute does not impose a duty upon the contracting governmental unit to require the bond.

3. The trial court properly granted summary disposition to the city.

Affirmed.

1. BONDS — PUBLIC WORK PROJECTS — CONTRACTS.

No duty exists on the part of a contracting governmental unit involved in a public work project to insure that bonds which are required to be furnished by the contractor are kept current or to warn subcontractors or materials suppliers of the expiration of the bond (MCL 129.201; MSA 5.2321[1]).

2. BONDS — PUBLIC WORK PROJECTS.

Contractors involved in public work projects are required by statute to furnish performance and payment bonds prior to the awarding of a contract; the bonds must be filed in the office of the governmental unit awarding the contract (MCL 129.201, 129.205; MSA 5.2321[1], 5.2321[5]).

3. BONDS — PUBLIC WORK PROJECTS — CERTIFIED COPIES OF BONDS.

The appropriate agent of a contracting governmental unit involved in a public work project which holds a payment bond by a contractor on the project must furnish to anyone who has made a claim or may have a claim under the bond a certified copy of the bond and the contract for which it was given; the governmental unit is authorized to charge a reasonable fee for providing such certified copies (MCL 129.208; MSA 5.2321[8]).

4. NEGLIGENCE — DUTY.

The existence of a legal duty owed by the defendant to the plaintiff is an essential element of a cause of action in negligence.

*Warren, Price & Cross, P.C.* (by *Mark R. Bailey*), for plaintiff.

*Cummings, McClorey, Davis & Acho, P.C.* (by *T. Joseph Seward*), for the City of Hazel Park.

Before: SAWYER, P.J., and M. J. KELLY and J. J. RASHID,* JJ.

SAWYER, P.J. The trial court granted summary

* Circuit judge, sitting on the Court of Appeals by assignment.

disposition to defendant City of Hazel Park pursuant to MCR 2.116(C)(8), failure to state a claim upon which relief can be granted. Plaintiff now appeals and we affirm.

Defendant Conco Midwest of Arkansas entered into a contract with defendant city to repair the city streets of Hazel Park. Conco then entered into a contract with plaintiff to supply materials for the project. Plaintiff notified defendant city that materials were being supplied. Plaintiff made a number of deliveries of materials from September through November of 1985, with a total value of $17,981.60.

Conco defaulted on payments owed to plaintiff and plaintiff sought relief on the payment bond that Conco was required to furnish to defendant city before being awarded the contract for the project. Defendant city informed plaintiff that the bond had expired in May, 1985. Plaintiff thereafter filed a complaint alleging, inter alia, that defendant city had breached its "statutory duty of insuring that the performance bond was still valid while materials were being supplied to the project." Plaintiff also brought claims for breach of contract against Conco and the bonding company, defendant Union Indemnity Insurance Company. Subsequent to the filing of the complaint, both Conco and Union Indemnity went into bankruptcy.

Because Conco and Union Indemnity were involved in bankruptcy proceedings, the circuit court action was stayed against all defendants. Plaintiff thereafter filed a motion to sever defendant city from the other defendants, a motion which was granted. Defendant city then moved for summary disposition, which was granted.

Plaintiff first argues on appeal that the trial court erred in granting summary disposition to defendant city for the reason that defendant city

owed no duty either to inform plaintiff that the bond had expired or to take steps to insure that the bond was renewed. Plaintiff argues that defendant city had such a duty. We disagree.

By statute, contractors involved in public work projects are required to furnish performance and payment bonds prior to the awarding of a contract. MCL 129.201 *et seq.*; MSA 5.2321(1) *et seq.* MCL 129.201; MSA 5.2321(1) establishes the bonding requirement, providing in pertinent part as follows:

> Before any contract, exceeding $50,000.00 for the construction, alteration, or repair of any public building or public work or improvement of the state or a county, city, village, township, school district, public educational institution, other political subdivision, public authority, or public agency hereinafter referred to as the "governmental unit", is awarded, *the proposed contractor, hereinafter referred to as the "principal contractor", shall furnish at his or her own cost to the governmental unit a performance bond and a payment bond* which shall become binding upon the award of the contract to the principal contractor.

The question of what duty, if any, the statute creates on the part of a governmental unit to inform those supplying labor and materials that the required bond has expired or to take steps to insure that an expired bond is renewed is an issue of first impression. For the reasons that follow, we conclude that no such duty exists.

We begin by noting that the emphasized language in the above quote indicates that the statute places a requirement on the contractor to furnish the bond rather than on the governmental unit to require the bond. While the importance of this semantic difference may not at first appear clear,

the importance becomes more obvious when the predecessor statute is examined. The predecessor statute, which was created by 1905 PA 187 and compiled at MCL 570.101 *et seq.*; MSA 26.321 *et seq.*, imposed a duty on the governmental body contracting the work to require sufficient security posted by bond for the payment of subcontractors and materials. When the current statutory scheme was enacted, it restricted the applicability of MCL 570.101 *et seq.*; MSA 26.321 *et seq.* to construction and maintenance contracts of the State Highway Commissioner. MCL 129.211; MSA 5.2321(11). Furthermore, in enacting the current statutory scheme, the Legislature chose not to include the language of the predecessor statute which imposed a duty upon the governmental body to require the bond. Rather, as discussed above, the language of the current statute places the duty to furnish the bond on the contractor. We believe that this change in language reflects an intent by the Legislature to remove any duty on the governmental unit and place it upon the contractor.

Such a conclusion is consistent with the other provisions of the statutory scheme. The role of the contracting governmental unit in the bonding procedure is limited to an essentially clerical role. MCL 129.203; MSA 5.2321(3) provides that the governmental unit shall specify the amount the payment bond shall be for, but not less than twenty-five percent of the contract amount, and MCL 129.205; MSA 5.2321(5) provides that the bonds shall be filed in the office of the governmental unit awarding the contract. Furthermore, the statute provides a mechanism for a subcontractor or materials supplier to determine whether the principal contractor has furnished the proper bonds. MCL 129.208; MSA 5.2321(8) requires that the appropriate agent of the governmental unit

which holds the bond shall furnish to anyone who has made a claim or may have a claim under the bond a certified copy of the bond and the contract for which it was given, with the governmental unit being authorized to charge a reasonable fee for providing such certified copies.

In reading these statutory provisions as a whole, as well as taking into account the change in the language employed by the Legislature in enacting the current statutory scheme, we conclude that the Legislature intended to impose no duty on the contracting governmental unit to insure that payment bonds are kept current or to warn subcontractors or materials suppliers of the expiration of a bond. Rather, we believe that the Legislature saw fit to place the burden on those subcontractors and materials suppliers, by providing that the payment bond be filed with the governmental unit, with whom the subcontractor or supplier could check to determine the existence of the bond, and by providing for a means by which interested parties could obtain a copy of the bond from the governmental unit.

Moreover, in the absence of an explicitly imposed duty on governmental units to supervise the renewal of bonds and to warn subcontractors and suppliers upon the expiration of bonds, it would be inappropriate to imply such a duty from the statutory scheme, particularly since the statutory scheme has provided for a method by which subcontractors and suppliers could ensure the existence of a payment bond. This is particularly true since it would be a herculean task for those governmental units which are engaged in a number of public works projects at any given time to continually check to ensure that a payment bond is still in force for each project and to determine the identity of the various subcontractors and suppli-

ers and to advise them of the status of the payment bond. Rather, the simpler method is that provided by the statute, which allows for those subcontractors or suppliers who are concerned about the status of the bond to confirm the existence of a valid bond with the governmental unit. Indeed, it is plaintiff's failure to confirm the existence of the bond at an earlier stage of the project than it did which has led to its current difficulties. Had it refused to deliver any materials until it was ensured that a valid bond was in existence, it would have avoided all of its current problems.

For the above reasons, we conclude that the trial court correctly concluded that defendant city owed no duty to plaintiff to inform plaintiff that the bond had expired or to ensure that the bond was renewed.

The existence of a legal duty owed by the defendant to the plaintiff is an essential element of a cause of action in negligence. *Roulo v Automobile Club of Michigan,* 386 Mich 324, 328; 192 NW2d 237 (1971). In the case at bar, since defendant city owed no legal duty to plaintiff, plaintiff's claim against the city is unenforceable as a matter of law and, therefore, the trial court properly granted summary disposition under MCR 2.116(C)(8) for the failure to state a claim upon which relief may be granted. *Beaudin v Michigan Bell Telephone Co,* 157 Mich App 185, 187; 403 NW2d 76 (1986).

Because we conclude that summary disposition was appropriate due to the lack of a duty to plaintiff by defendant city, it is unnecessary to consider plaintiff's second argument, whether its claim is barred by the doctrine of governmental immunity.

Affirmed. Defendant city may tax costs.