ABC SUPPLY COMPANY v CITY OF RIVER ROUGE

Docket No. 177719. Submitted March 5, 1996, at Detroit. Decided April 26, 1996, at 9:05 A.M. Leave to appeal sought.

ABC Supply Company brought an action in the Wayne Circuit Court against the City of River Rouge, H.S. Construction Company, Inc., and others, seeking payment for materials it had supplied on an open account to the defendant construction company for use on a construction project for the city. The claim against the city alleged liability for the amount owed on the basis of the failure of the city to require the construction company to furnish a payment bond before the awarding of the construction contract. The court, Michael L. Stacey, J., acting for Susan D. Borman, J., granted summary disposition for the city and dismissed the city as a defendant in the plaintiff's action. The plaintiff appealed.

The Court of Appeals *held:*

No duty exists on the part of a contracting governmental unit involved in a public work project to require that a contractor furnish a payment bond in accordance with MCL 129.201; MSA 5.2321(1). Accordingly, liability does not attach to a contracting governmental unit with respect to claims of unpaid suppliers and subcontractors by reason of the failure to require the contractor to furnish a payment bond in the absence of proof that the governmental unit affirmatively misled a materials supplier or subcontractor, before the furnishing of supplies or services, into believing that a valid payment bond existed. Because the plaintiff made no claim of being misled by the city with respect to the existence of a payment bond, the court properly granted summary disposition for the city.

Affirmed.

BONDS — PUBLIC WORK PROJECTS — PAYMENT BONDS.

No duty exists on the part of a contracting governmental unit involved in a public work project to require that a contractor furnish a statutory payment bond (MCL 129.201; MSA 5.2321[1]).

*Muller, Muller, Richmond, Harms, Myers & Sgroi* (by *Roy C. Sgroi* and *John E. Ortoleva*), for the plaintiff.

*Law Offices of F. Dennis Luke* (by *Kurt A. Olson*), for the defendant.

Before: Reilly, P.J., and Michael J. Kelly and C. L. Bosman,* JJ.

Michael J. Kelly, J. Plaintiff appeals as of right from an order of summary disposition for the City of River Rouge dismissing plaintiff's claim against the city. We affirm.

On appeal, plaintiff asserts that the lower court erred in finding that MCL 129.201; MSA 5.2321(1) does not provide a cause of action for a supplier injured by a governmental unit's failure to require a payment bond as described in the statute. Plaintiff urges that the statute imposes a duty on the governmental unit to require the contractor to furnish the bond before awarding the contract. The trial court granted summary disposition pursuant to MCR 2.116(C)(8), and that ruling is reviewed de novo.

Michigan's public work statute, MCL 129.201; MSA 5.2321(1), provides:

> Before any contract, exceeding $50,000.00 for the construction, alteration, or repair of any public building or public work or improvement of . . . [a governmental unit] . . . is awarded, the [principal] contractor. . . shall furnish at his or her own cost to the governmental unit a performance bond and a payment bond which shall become binding upon the award of the contract to the principal contractor.

---

\* Circuit judge, sitting on the Court of Appeals by assignment.

The threshold issue presented by this case is whether this language creates an affirmative duty on the part of a governmental unit to require the principal contractor to furnish the bonds. If such a duty exists, the issue then becomes whether the failure to require a payment bond is actionable by private parties who have been injured by the absence of the payment bond.

The primary aim of judicial interpretation of statutes is to ascertain and give effect to the legislative intent. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993). The starting point for determining this intent is the specific language of the statute itself. *Dodak v State Administrative Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993). If the meaning of the language is clear, judicial construction normally is not necessary or permitted. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992). If reasonable minds could differ concerning the meaning of the statute, judicial construction is appropriate. *Dep't of Social Services v Brewer*, 180 Mich App 82, 84; 446 NW2d 593 (1989). A court must look to the object of the statute and the harm that it was designed to remedy and apply a reasonable construction in order to accomplish the statute's purpose. *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 644; 513 NW2d 799 (1994). Particular provisions should be read in the context of the entire statute to produce an harmonious whole. *Weems v Chrysler Corp*, 448 Mich 679, 700; 533 NW2d 287 (1995).

This Court and the Michigan Supreme Court have had the opportunity to illuminate what duties are imposed by MCL 129.201; MSA 5.2321(1), but the pre-

cise issue at hand does not appear to have been decisively answered. Both plaintiff and the city assert that the Supreme Court's holding in *Kammer Asphalt Paving Co, Inc v East China Twp Schools*, 443 Mich 176; 504 NW2d 635 (1993), is dispositive regarding this issue. In *Kammer*, the defendant school district contracted with Dougherty Construction for construction and renovation work of athletic facilities in the district. *Id.* at 179. Pursuant to the public work statute, Dougherty furnished the school district with a payment bond. *Id.* Dougherty then subcontracted certain paving work to the plaintiff. *Id.* The plaintiff then notified the school district of its intended performance and its reliance on the payment bond. *Id.* Thereafter, the school district discovered that the payment bond was invalid and unenforceable and terminated the contract when Dougherty did not furnish a replacement bond. *Id.* at 180.

The plaintiff then filed suit against Dougherty and the school district, claiming, inter alia, that the school district was liable for its failure to ensure the validity of the bond. *Id.* at 181. The circuit court granted summary disposition for the school district with respect to the plaintiff's claim, finding that the statute did not impose such a duty, and this Court affirmed in an unpublished opinion per curiam. *Id.*

The Supreme Court reversed, finding that the provision of the statute that requires the governmental unit to provide a certified copy of the bond at the request of the subcontractor implicitly requires that governmental unit to verify the validity of the bond. *Id.* at 184. Therefore, the Court concluded that the statute imposed the risk of invalidity of the bond on the government entity. *Id.* However, the Court noted:

> On the other hand, if [the] plaintiff had never requested the copies, then it would possess no recourse because the risk of the invalidity would not have been imposed upon [the] defendant. This is a sensible reading of the statute. After nonpayment by a general contractor, if subcontractors are willing to work without at least requesting copies of the bonds, then they assume the risk that no bonds (or invalid bonds) exist. If however, subcontractors do take steps to ensure a bond exists, MCL 129.208; MSA 5.2321(8) permits subcontractors to presume that the bonds are filed and validly executed. [Id. at 184, n 19.]

The Supreme Court, therefore, held that the plaintiff was entitled to proceed with its negligence claim against the school district, because the school district's providing of the certified copies of the bond was prima facie evidence that the bond was valid, and the school district was liable for damages resulting from its failure to verify the validity of the bonds. Id. at 185.

In the instant case, plaintiff asserts that the *Kammer* case explicitly imposes a duty on a contracting governmental unit to require a principal contractor to furnish a payment bond. With respect to footnote nineteen, plaintiff asserts that the assumption of the risk applies only to subcontractors or suppliers who continue to work or supply materials after nonpayment by the principal contractor, which plaintiff did not do in the present case. However, plaintiff did not rely on any assurances by the defendant concerning the existence of any payment bond, because by the time it made its inquiry it had already delivered the materials to H.S. Construction Company on an open account.

On the other hand, the city asserts that *Kammer* is to be limited to its narrow holding that a governmen-

tal unit is under a duty only when it supplies certified copies of the bond to a subcontractor or a supplier. In addition, the city argues that footnote nineteen clearly indicates that a subcontractor or a supplier can protect itself by inquiring about the bond, but if it does not do so it must bear the risk of the absence or invalidity of the bond. If it inquires about the bond after the delivery of the goods on the contractor's credit, it has done a futile act. We agree.

Furthermore, we rely on the holding of this Court in *Barnes & Sweeney Enterprises, Inc v Hazel Park*, 169 Mich App 422; 425 NW2d 572 (1988), wherein this Court found that governmental entities had no duty to inform a subcontractor or a supplier that the furnished statutory bond had expired. In reaching that conclusion, this Court examined the statute in relation to the previous public work statute that it had replaced. *Id.* at 426. This Court noted that the predecessor statute explicitly imposed a duty on the governmental unit to require sufficient security posted by bond for the payment of subcontractors and materials. *Id.* In contrast, this Court found that the new statute did not impose such a duty, rather the duty was now imposed on the principal contractor to obtain such bonds. *Id.* Under the holding of *Barnes*, the risk of loss due to the absence or invalidity of the statutory bonds was entirely on the subcontractor or supplier. *Id.* at 427-428.

We believe the clear language of *Kammer* does not go so far as to construe MCL 129.201; MSA 5.2321(1), as placing an affirmative duty on the governmental unit to require that the statutory bonds be furnished. *Kammer, supra* at 184-185. The holding was based on a duty found in MCL 129.208; MSA 5.2321(8) where

the governmental unit is required to furnish a certified copy of the bond. *Kammer, supra* at 182. That provision states that the certified copy "shall be prima facie evidence of the contents, execution, and delivery of the original." The Court found that language to provide unambiguously that a government entity verifies the validity of a payment bond when it provides a certified copy of the bond at the request of a subcontractor or a supplier. *Id.* at 184. Contrary to plaintiff's assertion, the holding is limited to that situation. It does not provide for a broad duty of the government unit to require the bonds or be liable for parties injured by the failure to require the bonds. *Id.* at 184-185. If the Legislature intended that a governmental unit indemnify subcontractors if it waived the bond or if it failed to demand the bond in the first instance, then the Supreme Court has misread the statute. However, only the Supreme Court can remedy that situation.

Affirmed.